UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
EDWARD GUILLEN,

                                **COMPLAINT**

               Plaintiff,

    -against-               **Demand for Trial by Jury**

CITY OF NEW YORK, individually and in their official    ECF Case
capacities as police officers, YERALDY BONIFACIO,    Docket No. 19-cv-11784
MICHAEL DAPPOLONIA, JOSE TORIBIO,
AMANDA KNAPP and JOHN or JANE DOES 1-10,

               Defendants.

-------------------------------------------------------------------X

       Plaintiff, Edward Guillen, by and through the undersigned attorneys, Sim & DePaola,

LLP, for his complaint against the Defendants, City of New York, Yeraldy Bonifacio, Michael

Dappolonia, Jose Toribio, Amanda Knapp and John or Jane Does 1-10, alleges and states as

follows:

## PRELIMINARY STATEMENT

1.     This is a civil rights action in which Plaintiff seeks relief through 42 U.S.C. §§ 1981,

1983, 1985, 1986 and 1988 for the violation of his civil rights protected by the Fourth, Sixth and

Fourteenth Amendments, in addition to violations of the Laws and Constitution of the State of

New York.

2.     These claims arise from a January 31, 2018 incident in which defendants, acting under

color of state law, unlawfully stopped, arrested and detained Mr. Guillen without a valid warrant,

reasonable suspicion or probable cause to do so. Mr. Guillen was subsequently charged with two

violations of the New York City Administrative Code for allegedly possessing an illicit air pistol.

As a result, Mr. Guillen was wrongfully incarcerated for approximately two (2) days. He was

thereafter maliciously prosecuted, until the unconditional dismissal of all charges on September 25, 2018.

3.      The above referenced acts caused Mr. Guillen to be deprived of his liberty, denied the due process of the laws and to sustain various emotional and physical injuries.

4.      Plaintiff seeks monetary damages (compensatory and punitive) against Defendants, as well as an award of costs and attorneys' fees, and such other and further relief as the Court may deem just and proper.

## JURISDICTION

5.      This action arises under the Fourth, Sixth and Fourteenth Amendments to the United States Constitution, under 42 U.S.C. §§ 1981, 1983, 1985, 1986 and 1988 and pursuant to the Laws and Constitution of the State of New York.

6.      The jurisdiction of this Court is predicated upon 28 U.S.C. §§ 1331, 1343(a)(3) and (4), 1367(a) and the doctrine of supplemental jurisdiction.

## VENUE

7.      Venue is laid within the Southern District of New York in that Defendant City of New York is located within and a substantial part of the events giving rise to the claims occurred within the boundaries of the Southern District. 28 U.S.C. § 1391 (b) and (c).

## PARTIES

8.      Plaintiff, Edward Guillen ("Mr. Guillen"), is a Hispanic male, who resides in Bronx County, within the City and State of New York.

9.      The Defendant, City of New York ("City"), is a municipal corporation organized under the laws of the State of New York.

10.     At all times relevant hereto, Defendant City, acting through the New York City Police Department ( "NYPD"), was responsible for the policy, practice, supervision, implementation, and conduct of all NYPD matters and was responsible for the appointment, training, supervision, discipline and retention and conduct of all NYPD personnel, including police officers, detectives, and supervisory officers as well as the individually named Defendants herein.

11.     In addition, at all times here relevant, Defendant City was responsible for enforcing the rules of the NYPD, and for ensuring that the NYPD personnel obey the laws of the United States and the State of New York.

12.     Defendants, Yeraldy Bonifacio, Michael Dappolonia, Jose Toribio, Amanda Knapp were, at all relevant times herein, police officers or detectives employed by the NYPD and as such were acting in the capacities of agents, servants and employees of the City of New York. Defendants were, at all relevant times herein, believed to be assigned to the NYPD's 28th Precinct. Defendants Yeraldy Bonifacio, Michael Dappolonia, Jose Toribio, Amanda Knapp are being sued in their individual and official capacities.

13.     At all relevant times, Defendants John or Jane Doe 1 through 10 were police officers, detectives, supervisors, policy makers and/or officials employed by the NYPD.  At this time, Plaintiff does not know the true names or tax registry numbers of John or Jane Doe 1 through 10, but believes such knowledge is within possession of the defendants.

14.     At all relevant times herein, Defendants John or Jane Does 1 through 10 were acting as agents, servants and employees of the City of New York, the NYPD.  Defendants John or Jane Does 1 through 10 are being sued in their individual and official capacities.

15.     At all relevant times herein, Defendants were acting under color of state law, to wit, under color of the statutes, ordinances, regulations, policies, customs and usages of the City and State of New York.

16.     Plaintiff has timely filed an application with the Supreme Court of the State of New York, New York County, on December 17, 2019, requesting leave to serve a late notice of claim upon defendant, City of New York.

## FACTUAL CHARGES

17.     On January 31, 2018, at approximately 10:00 p.m., Mr. Guillen was driving his motor vehicle in the vicinity of 194 Lenox Avenue in the County and State of New York.

18.     At all times herein mentioned, Mr. Guillen was in obeyance of all laws, including all vehicle and traffic laws then in effect.

19.     At the above stated location, Mr. Guillen was illegally stopped Defendants, including Yeraldy Bonifacio, Michael Dappolonia, Jose Toribio, Amanda Knapp, as he not committed any traffic infractions or violated any other laws.

20.     Defendants, including Yeraldy Bonifacio, Michael Dappolonia, Jose Toribio, Amanda Knapp, approached Mr. Guillen's vehicle and ordered him to step out of his vehicle without any legal basis or justification for doing so, as there were no indicia of criminal activity present.

21.     Defendants, including Yeraldy Bonifacio, Michael Dappolonia, Jose Toribio, Amanda Knapp, then proceeded to illegally search Mr. Guillen's person and the vehicle he was driving, as Mr. Guillen had not committed any crimes or traffic infractions and there were no indicia of contraband within the vehicle.

22.     Defendants, including Yeraldy Bonifacio, Michael Dappolonia, Jose Toribio, Amanda Knapp, falsely claimed that an illicit air pistol was recovered by defendant Bonifacio from within a backpack behind the driver's seat of Mr. Guillen's vehicle that resembled a real firearm, as the item he recovered was not proscribed by any statute, law, regulation or code.

23.     Mr. Guillen was not in unlawful possession of an air pistol, as the item that was recovered was not illegal in any way.

24.     Defendants, including Yeraldy Bonifacio, Michael Dappolonia, Jose Toribio, Amanda Knapp, further falsely claimed that Mr. Guillen sold and offered to sell an imitation pistol, that the air pistol did not have the manufacturers name or brand stamped on the barrel and the pistol had a laser pointer attached to it.

25.     Subsequent to Defendants' illegal car stop and their illegal searches of Mr. Guillen's person and vehicle, Defendants, including Yeraldy Bonifacio, Michael Dappolonia, Jose Toribio, Amanda Knapp, proceeded to illegally arrest Mr. Guillen for the possession of a legal item based on their fabricated observations and claims.

26.     Defendants, including Yeraldy Bonifacio, Michael Dappolonia, Jose Toribio, Amanda Knapp, applied the handcuffs to Mr. Guillen's person in an excessively forceful and tight fashion, which caused him to suffer substantial pain and discomfort.

27.     Upon arrival at the precinct, Defendants, including Yeraldy Bonifacio, Michael Dappolonia, Jose Toribio, Amanda Knapp, conducted or authorized an illegal strip search and cavity inspection of Mr. Guillen's person, as there no reasonable suspicion or probable cause to believe that any contraband had been secreted therein.

28.     The accusatory instrument, also referred to as a Criminal Court Complaint, was signed by Defendant Bonifacio.

29.     Defendants, including Yeraldy Bonifacio, Michael Dappolonia, Jose Toribio, Amanda Knapp, knowingly and intentionally gave false, misleading, or incomplete information to the District Attorney's Office, namely that he was in possession of an illicit air pistol that duplicated a real firearm, so that a criminal prosecution would be initiated against Mr. Guillen.

30.     Mr. Guillen asserts that Defendants, including Yeraldy Bonifacio, Michael Dappolonia, Jose Toribio, Amanda Knapp, arrested and detained him with the full knowledge that he committed no crimes or violations of the law.

31.     No witnesses ever informed Defendants, including Yeraldy Bonifacio, Michael Dappolonia, Jose Toribio, Amanda Knapp, that Mr. Guillen was in possession of an illicit air pistol or that he was selling air pistols.

32.     Mr. Guillen, therefore, asserts that due to the clear absence of any viable probable cause to warrant his detention or prosecution, at any point, he was unlawfully detained and maliciously prosecuted from the moment his vehicle was stopped by Defendants, up to, and until the unconditional dismissal of the criminal charges against him on September 25, 2018.

33.     Mr. Guillen was deprived of his liberty and freedom of movement after his criminal court arraignment, because he was compelled to personally appear in court for almost nine (9) months to contest the baseless allegations against him.

34.     These gratuitous infringements upon his liberty persisted until the New York County District Attorney's Office moved to dismiss the criminal proceeding against Mr. Guillen on September 25, 2018, representing a favorable termination.

35.     At all times relevant hereto, the Defendants, including Yeraldy Bonifacio, Michael Dappolonia, Jose Toribio, Amanda Knapp, were involved in the decision to arrest Plaintiff

without probable cause, or failed to intervene when they observed others arresting Plaintiff without probable cause.

36.     Defendant City has engaged in a policy, custom, or pattern and practice of stopping vehicles driven by ethnic minorities without probable cause or reasonable suspicion to do so,

37.     Defendant City has also engaged in a policy, custom, or pattern and practice of illegally searching unlawfully stopped vehicles without any justification to do so, with the hope that said search will thereafter justify the illegal seizure.

38.     Mr. Guillen asserts that the aforementioned unlawful acts committed by defendants are representative of a pervasive policy, custom or pattern and practice within the City of New York and the NYPD.

39.     Mr. Guillen asserts that Defendants, including Yeraldy Bonifacio, Michael Dappolonia, Jose Toribio, Amanda Knapp, illegally pulled him over, searched his vehicle and person, and then falsely arrested him, due solely to their racially discriminatory prejudices, their desire to meet an arrest quota and to benefit from increased overtime compensation.

40.     Mr. Guillen further asserts that Defendants, including Yeraldy Bonifacio, Michael Dappolonia, Jose Toribio, Amanda Knapp, acted in such an unlawfully reprehensible manner, due to their assumption that defendants' version of events would undoubtedly and unduly be credited over Mr. Guillen's, solely because Mr. Guillen is a Hispanic male.

41.     Defendants, including Yeraldy Bonifacio, Michael Dappolonia, Jose Toribio, Amanda Knapp, arrested and maliciously prosecuted Plaintiff, not because of any actual probable cause to believe Plaintiff had committed any crimes or violations of the law, but because of their pernicious belief that an individual like plaintiff must be doing something illegal to be driving the vehicle he was driving, a Ford Expedition.

42.     Defendants, including Yeraldy Bonifacio, Michael Dappolonia, Jose Toribio, Amanda Knapp, perpetrated multiple overt acts in furtherance of their obviously discriminatory inclinations, namely the unlawful car stop, searches, assaults, batteries, seizure, arrest, and malicious prosecution against plaintiff.

43.     Defendants, including Yeraldy Bonifacio, Michael Dappolonia, Jose Toribio, Amanda Knapp, unlawfully stopped, questioned, searched, seized, arrested, and maliciously prosecuted plaintiff, due solely to defendants' perception or consideration of Plaintiff's race.

44.     Defendants, including Yeraldy Bonifacio, Michael Dappolonia, Jose Toribio, Amanda Knapp, possessed no valid reason to stop plaintiff's vehicle, to search plaintiff's vehicle, or to arrest plaintiff, which gives rise to the strong inference that their unlawful conduct towards Plaintiff was discriminatorily motivated and enacted upon.

45.     Defendants, including Yeraldy Bonifacio, Michael Dappolonia, Jose Toribio, Amanda Knapp, subjected plaintiff to disparate treatment compared to other individuals similarly situated, because defendants did not pull over any white motorists, who were actually committing traffic infractions in the defendants' view.

46.     Of significant note, is the undisputed fact that defendants did not charge plaintiff with a single traffic infraction or actual violation of the law.

47.     Plaintiff asserts that the defendants, including Yeraldy Bonifacio, Michael Dappolonia, Jose Toribio, Amanda Knapp, who violated plaintiff's civil rights, are part of a larger pattern and practice of similar misconduct, which is so widespread, pervasive and consistent throughout the NYPD and the City of New York that the commission such constitutionally violative behavior has become tantamount to an official policy or custom within the NYPD and City of New York or, at the very least, conclusive evidence that the City and the NYPD have either tacitly approved

of such egregious wrongdoings or that they have become deliberately indifferent to the civil

rights of those who may come into contact their police officers.

48.     The individually named defendants herein, as well as other officers serving in the employ

of the NYPD and City of New York, have blatantly, shamelessly, consistently and repeatedly

engaged in conduct violative of the civil rights guaranteed and protected by Constitution of the

United States, in addition to the laws and Constitution of the State of New York, all without

incurring any ramifications for such misconduct and, ostensibly, with the full and complete

blessing of the NYPD, the City of New York and their respective policymakers and supervisors.

49.     *The New York Times*, as well as numerous other reputable journalistic enterprises, have

reported on the widespread corruption within the NYPD and City of New York, particularly the

incredibly disconcerting proclivity of many NYPD officers to lie about subject matters that are

materially relevant to criminal prosecutions, including the complete fabrication of arrest

evidence and witnesses. Attached hereto, as Exhibit A, and incorporated by reference herein, are

various articles and reports detailing the magnitude and overwhelming prevalence of incidents,

in which NYPD officers were caught lying, including instances that resulted in the arrest and

imprisonment of innocent people. Also detailed, is the NYPD's obstinate refusal to effectuate

corrective or preventive measures to combat the inevitable recurrence of such misdeeds, and

perhaps most troubling, the NYPD's alarming tendency to, instead, reward and promote these

officers, including those who were inculpated via some incontrovertible form of evidence.

50.     On March 18, 2018, *The New York Times* published an explosive article, entitled

"Promotions, Not Punishments for Officers Accused of Lying," written by Joseph Goldstein. Mr.

Goldstein shines a light on the multitude of flaws within the CCRB and the NYPD, highlighting

the fact that the substantiation of a claim against an officer will invariably rely on the presence of

incontrovertible proof against the officer. Due to the rarity availability of this type of evidence, an alarmingly small percentage of officer misconduct claims are substantiated. The CCRB is further handicapped by a terribly designed system that requires evidence of a virtually indisputable nature to substantiate any claim against an officer. The article also details the NYPD's persistent reluctance to investigate or discipline officers who lie and even posits that this reluctance is a significant cause of the lying pandemic within the NYPD. The article references various officers and detectives who were the subject of credible accusations relating to the officers' intentionally false statements, with some allegations coming from federal and state judges.

51.     On September 12, 2019, *The New York Times* published another article by Joseph Goldstein, entitled "Officers Said They Smelled Pot. The Judge Called Them Liars." Unsurprisingly, this article dealt with the unusually high frequency of officers using the odor of marijuana to excuse a search that conspicuously does not result in the recovery of any marijuana. It should not require an article in *The New York Times* to call attention to such patently disingenuous tactics, but has become necessary for a variety of reasons, including the NYPD's failure to correct such behavior, the willingness of prosecutors and judges to credit the lying officers and the increasing rate of occurrence.

52.     On April 24, 2019, *The New York Times* published an article, entitled "Detective's Lies Sent Three People to Prison, Prosecutors Charge," by Sean Piccolo, detailing the lies of NYPD Second Grade Detective Joseph Franco and how those lies resulted in the imprisonment of at least three innocent people. The article described how Det. Franco lied about observing drug transactions on at least three separate occasions, lies that were only uncovered through

contradictory video evidence. Det. Franco's lies resulted in the innocent individuals each being sentenced to prison terms in excess of one-year.

53.     Other articles include: (i) "Testilying' by Police: A Stubborn Problem.," by Joseph Goldstein, *The New York Times*, March 18, 2018; (ii) "New York Detective Charged with Faking Lineup Results," by Joseph Goldstein, *The New York Times*, February 17, 2018; (iii) "He Excelled as a Detective, Until Prosecutors Stopped Believing Him," by Joseph Goldstein, *The New York Times*, October 17, 2017; (iv) "Review Board Notes Rise in New York Police Officers' False Statement," by J. David Goodman, *The New York Times*, May 14, 2015; (v) "In Brooklyn Gun Cases, Suspicion Turns to the Police," by Stephanie Clifford, *The New York Times*, December 11, 2014; (vi) "Detective is Found Guilty of Planting Drugs," by Tim Stelloh, *The New York Times*, November 1, 2011; and (vii) "The Drugs? They Came From the Police," by Jim Dwyer, *The New York Times*, October 13, 2011.

54.     The NYPD has a longstanding and ignominious record of failing to discipline its officers, or even entertaining allegations of wrongdoing against them. On June 26, 2019, *The New York Times* published an article, entitled "2,495 Reports of Police Bias. Not One Was Deemed Valid by the N.Y.P.D." This article reported that within the last five (5) years, almost 2,500 separate individuals have filed formal complaints with the NYPD alleging that an officer acted with bias toward them, with not a single one being substantiated by the NYPD. Such a finding is plainly incredible and obviously the result of deliberately poor or nonexistent investigatory protocols. The report further impugned the NYPD's commitment to combat the prejudices and the biases exhibited by many of its officers.

55.     Upon information and belief, the NYPD, the City of New York, and their respective policymakers, officials or supervisors have imposed, tacitly approved or acquiesced to policies,

customs, or patterns and practices within the NYPD that resulted in plaintiff's arrest without probable cause.

56.     Upon information and belief, the NYPD, the City of New York, and their respective policymakers or supervisors have failed to provide adequate training regarding the identification of probable cause, reasonable suspicion or the appropriate amount of force to be used.

57.     Defendants' actions, pursuant to plaintiff's underlying arrest, which occurred without even the semblance of probable cause, were so blatantly violative of plaintiff's civil rights that the tacit approval of identical or similar acts by the policymakers or supervisors of the NYPD and the City of New York, as well as their deliberate indifference towards the rights of any individuals who may come into contact with defendants, should be inferred, because such flagrant deprivations of constitutionally protected rights could not and would not occur without the tacit approval or deliberate indifference regarding the commission of such violations by the policymakers or supervisors of the NYPD and City of New York.

58.     Upon information and belief, further details and facts, relating to the unlawful policies, customs or patterns and practices of the NYPD, City of New York and their respective policymakers, supervisors, police officers or employees, will become known after the completion of discovery, as such information is presently within the exclusive possession of defendants, the NYPD and City of New York.

59.     Upon information and belief, the personnel files, records and disciplinary histories of the officer defendants will reveal a history of Constitutional violations indicative of defendant City's knowledge that the individual officer defendants were unfit for employment as NYPD officers, or for employment in general, and that the probability of the individually named defendants committing similar violations in the future was extremely high.

60.     Upon information and belief, said personnel files, records and disciplinary histories will conclusively show that the City and the NYPD were fully aware of defendants' past constitutional violations, the unacceptably high probability for the recurrence of similar transgressions, the unreasonably dangerous situations that were likely to result from their hiring or retention, as well as their unsuitability for employment as law enforcement officers, or for employment in general, and that the NYPD and City of New York failed to engage in any preventive or corrective action intended to diminish the likelihood of recurrence for such violations, which is tantamount to the City's tacit approval of such misconduct or the City's deliberate indifference towards the civil rights of those who may interact with its employees, including Yeraldy Bonifacio, Michael Dappolonia, Jose Toribio, Amanda Knapp,.

61.     Upon information and belief, the NYPD and City of New York and have failed, or outright refused, to correct the individually named defendants' predilections to engage in unconstitutional behavior or attempt to prevent the recurrence of such misconduct

62.     The aforementioned acts of defendants, including the City, Yeraldy Bonifacio, Michael Dappolonia, Jose Toribio, Amanda Knapp, directly or proximately resulted in the deprivation or violation of plaintiff's civil rights, as guaranteed and protected by the Fourth, Sixth and Fourteenth Amendments to the United States Constitution, as well as the laws and Constitution of the State of New York.

63.     As direct or proximate results of said acts, plaintiff was caused to suffer the loss of his liberty, irreparable reputational harm, loss of earnings and potential earnings, physical injury, as well as severe and permanent emotional distress, including fear, embarrassment, humiliation, traumatization, frustration, extreme inconvenience, and anxiety.

## FIRST CAUSE OF ACTION
Unlawful Search and Seizure Under
New York State Law

64.    The above paragraphs are here incorporated by reference as though fully set forth.

65.    Defendants subjected plaintiff and his property to unreasonable searches and seizures

without a valid warrant and without reasonable suspicion or probable cause do so.

66.    Plaintiff was conscious and fully aware of the unreasonable searches and seizures to his

person and property.

67.    Plaintiff did not consent to the unreasonable searches and seizures to his person or

property.

68.    The unreasonable searches and seizures to plaintiff's person and property were not

otherwise privileged.

69.    Accordingly, defendants violated plaintiff's right to be free from unreasonable searches

and seizures, pursuant to the Fourth Amendment to the United States Constitution and Article I,

Section 12, of the New York State Constitution.

70.    Defendant City of New York, as employer of the individual Defendants, is responsible

for their wrongdoings under the doctrine of *respondeat superior*.

71.    As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages

hereinbefore alleged.

## SECOND CAUSE OF ACTION
Unlawful Search and Seizure Under
42 U.S.C. § 1983 Against Individual Defendants

72.    The above paragraphs are here incorporated by reference as though fully set forth.

73.    Defendants subjected plaintiff and his property to unreasonable searches and seizures

without a valid warrant and without reasonable suspicion or probable cause do so.

74.     Plaintiff was conscious and fully aware of the unreasonable searches and seizures to his person and property.

75.     Plaintiff did not consent to the unreasonable searches and seizures to his person or property.

76.     The unreasonable searches and seizures to plaintiff's person and property were not otherwise privileged.

77.     Accordingly, defendants violated plaintiff's right to be free from unreasonable searches and seizures, pursuant to the Fourth Amendment to the United States Constitution and Article I, Section 12, of the New York State Constitution.

78.     As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

### THIRD CAUSE OF ACTION
False Arrest and False Imprisonment Under
New York State Law

79.     The above paragraphs are here incorporated by reference as though fully set forth.

80.     Defendants subjected Plaintiff to false arrest, false imprisonment, and deprivation of liberty without probable cause.

81.     Plaintiff was conscious of his confinement.

82.     Plaintiff did not consent to his confinement.

83.     Plaintiff's arrest and false imprisonment was not otherwise privileged.

84.     Defendant City, as employer of the individual Defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior*.

85.     As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

## FOURTH CAUSE OF ACTION
False Arrest and False Imprisonment Under
42 U.S.C. § 1983 Against Individual Defendants

86.     The above paragraphs are here incorporated by reference as though fully set forth.

87.     The Defendants violated the Fourth and Fourteenth Amendments to the U.S. Constitution

by wrongfully and illegally arresting, detaining and imprisoning Plaintiff.

88.     The wrongful, unjustifiable, and unlawful apprehension, arrest, detention, and

imprisonment of Plaintiff was carried out without a valid warrant, without Plaintiff's consent,

and without probable cause or reasonable suspicion.

89.     At all relevant times, Defendants acted forcibly in apprehending, arresting, and

imprisoning Plaintiff.

90.     As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages

hereinbefore alleged.

## FIFITH CAUSE OF ACTION
Assault and Battery Under
New York State Law

91.     The above paragraphs are here incorporated by reference as though fully set forth.

92.     Defendants made plaintiff fear for his physical well-being and safety and placed him in

apprehension of immediate harmful or offensive touching.

93.     Defendants engaged in and subjected plaintiff to immediate harmful or offensive

touching and battered him without his consent.

94.     Defendant City, as employer of the individual Defendants, is responsible for their

wrongdoing under the doctrine of *respondeat superior*.

95.     As a direct and proximate result of this breach, Plaintiff sustained the damages

hereinbefore alleged.

## SIXTH CAUSE OF ACTION
Excessive Force Under
42 U.S.C. § 1983 Against Individual Defendants

96.     The above paragraphs are here incorporated by reference as though fully set forth.

97.     The Defendants violated Plaintiff's rights under the Fourth and Fourteenth Amendments, because they used unreasonable force without Plaintiff's consent.

98.     Defendants engaged in and subjected Plaintiff to immediate harmful and/or offensive touching and battered him without his consent.

99.     As a direct and proximate result of this breach, Plaintiff sustained the damages hereinbefore alleged.

## SEVENTH CAUSE OF ACTION
Malicious Prosecution Under
New York State Law

100.    The above paragraphs are here incorporated by reference as though fully set forth.

101.    Defendants initiated the prosecution against Plaintiff.

102.    Defendants lacked probable cause to believe Plaintiff was guilty or that a prosecution would succeed.

103.    Defendants acted with malice, which may be inferred in the absence of probable cause.

104.    The prosecution was terminated in Plaintiff's favor, when all criminal charges were unconditionally dismissed and sealed.

105.    Defendant City, as employer of the individual Defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior*.

106.    As a direct and proximate result of this breach, Plaintiff sustained the damages hereinbefore alleged.

**EIGHTH CAUSE OF ACTION**
Malicious Prosecution Under
42 U.S.C. § 1983 Against Individual Defendants

107.    The above paragraphs are here incorporated by reference as though fully set forth.

108.    Defendants initiated the prosecution against Plaintiff.

109.    Defendants lacked probable cause to believe Plaintiff was guilty or that a prosecution would succeed.

110.    Defendants acted with malice, which may be inferred in the absence of probable cause.

111.    The prosecution was terminated in Plaintiff's favor, when all criminal charges were unconditionally dismissed and sealed.

112.    Accordingly, Defendants violated Plaintiff's Fourteenth Amendment rights.

113.    As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

**NINTH CAUSE OF ACTION**
Malicious Abuse of Process Under
New York State Law

114.    The above paragraphs are here incorporated by reference as though fully set forth.

115.    Defendants arrested, detained and caused a criminal prosecution to be initiated against plaintiff to compel the compliance or forbearance of some act.

116.    Defendants had no excuse or justification to forcibly detain or initiate a prosecution against Plaintiff, especially with the absence of any cognizable probable cause.

117.    Defendants intended to inflict substantial harm upon plaintiff.

118.    Defendants acted to achieve a collateral purpose, beyond or in addition to plaintiff's criminal prosecution.

119.    Defendant City, as employer of the individual Defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior*.

120.     As a direct and proximate result of this unlawful conduct, plaintiff sustained the damages hereinbefore alleged.

## TENTH CAUSE OF ACTION
Malicious Abuse of Process Under
42 U.S.C. § 1983 Against Individual Defendants

121.    The above paragraphs are here incorporated by reference as though fully set forth.

122.    Defendants arrested, detained and caused a criminal prosecution to be initiated against plaintiff to compel the compliance or forbearance of some act.

123.    Defendants had no excuse or justification to forcibly detain and initiate a prosecution against plaintiff, especially with the absence of any cognizable probable cause.

124.    Defendants intended to inflict substantial harm upon plaintiff.

125.    Defendants acted to achieve a collateral purpose, beyond or in addition to plaintiff's criminal prosecution.

126.    Defendants' actions deprived plaintiff of his right to free from illegal searches and seizures, as well as his right not to be deprived of his liberty without the due process of law.

127.    As a direct and proximate result of this unlawful conduct, plaintiff sustained the damages hereinbefore alleged.

## ELEVENTH CAUSE OF ACTION
Denial of Right to Fair Trial Under
New York State Law

128.    The above paragraphs are here incorporated by reference as though fully set forth herein.

129.     Defendants fabricated false evidence to be used against plaintiff that was likely to influence a jury's decision.

130.    Defendants forwarded said false information to the District Attorney's Office.

131.    Defendants' actions caused undue post-arraignment restrictions to be imposed on his liberty and freedom of movement.

132.    Accordingly, defendants violated plaintiff's right to a fair trial, pursuant to the Sixth and Fourteenth Amendments to United States Constitution, Article I, Sections 1, 2 and 6 of the New York State Constitution, as well Article II, Section 12, of the New York State Civil Rights Law.

133.    Defendant City, as employer of the individual Defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior*.

134.    As a direct and proximate result of this unlawful conduct, plaintiff sustained the damages hereinbefore alleged.

## TWELFTH CAUSE OF ACTION
### Denial of Right to Fair Trial Under
42 U.S.C. § 1983 Against Individual Defendants

135.    The above paragraphs are here incorporated by reference as though fully set forth.

136.    Defendants fabricated false evidence to be used against Plaintiff that was likely to influence a jury's decision and forwarded said false information to the New York County District Attorney's Office.

137.    Defendants' actions deprived Plaintiff of his right to a fair trial and caused post-arraignment restrictions to be imposed on his liberty and freedom of movement.

138.    Accordingly, defendants violated Plaintiff's right to a fair trial, pursuant to the Sixth and Fourteenth Amendments to United States Constitution

139.    As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

## THIRTEENTH CAUSE OF ACTION
Deprivation of Rights and Denial of Equal Protection of the Laws under
New York State law

140.    The above paragraphs are here incorporated by reference as though fully set forth herein.

141.    Plaintiff, as a Hispanic male, is a member of a racial minority and protected class.

142.    Defendants discriminated against Plaintiff on the basis of his race, color or ethnicity.

143.    Defendants also engaged in the selective of Plaintiff, in comparison to others similarly situated.

144.    Defendants' selective treatment of Plaintiff was based on impermissible considerations, such as race, color, ethnicity, an intent to inhibit or punish Plaintiff's exertion of his Constitutional rights, or a malicious or bad faith intent to injure Plaintiff.

145.    Defendants applied facially neutral laws against Plaintiff in a discriminatory manner.

146.    Defendants, motivated by discriminatory animus, applied facially neutral statutes with adverse effects against Plaintiff.

147.    Defendants did not possess a rational basis, excuse or justification for applying any laws or statutes against Plaintiff.

148.    Defendant City, as employer of the individual Defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior*.

149.    As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

## FOURTEENTH CAUSE OF ACTION
Deprivation of Rights and Denial of Equal Protection of the Laws under
42 U.S.C. §§ 1981 and 1983 Against Individual Defendants

150.    The above paragraphs are here incorporated by reference as though fully set forth herein.

151.    Plaintiff, as a Hispanic male, is a member of a racial minority and protected class.

152.    Defendants discriminated against Plaintiff on the basis of his race, color or ethnicity

153.    Defendants also selectively treated Plaintiff in comparison to others similarly situated.

154.    Defendants' selective treatment of Plaintiff was based on impermissible considerations, such as race, color, ethnicity, an intent to inhibit or punish Plaintiff's exertion of his Constitutional rights, or malicious or bad faith intent to injure Plaintiff.

155.    Defendants applied facially neutral laws against Plaintiff in a discriminatory manner.

156.    Defendants, motivated by a discriminatory animus, applied facially neutral penal statutes with adverse effects against Plaintiff.

157.    Defendants did not possess a rational basis, excuse or justification for applying any laws or statutes against Plaintiff.

158.    As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

## FIFTEENTH CAUSE OF ACTION
Conspiracy to Interfere with Civil Rights and Failure to Prevent the Conspiracy under
42 U.S.C. §§ 1981, 1983, 1985 and 1986 Against Individual Defendants

159.    The above paragraphs are here incorporated by reference as though fully set forth herein.

160.    Defendants engaged in a conspiracy against Plaintiff to deprive Plaintiff of the equal protection of the laws, or of the privileges and immunities under the laws.

161.    Defendants committed overt acts in furtherance of their conspiracy against Plaintiff.

162.    Plaintiff sustained injuries to his person or was deprived of rights or privileges of citizens of the United States.

163.    Defendants' conspiracy was motivated by some racial, or otherwise class-based, invidious discriminatory animus.

164.     The Defendants that did not engage or participate in the conspiracy to interfere with Plaintiff's civil rights, had knowledge that acts in furtherance of the conspiracy were about to be committed or being committed, possessed the power to prevent or aid, and neglected to do so.

165.     As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

## SIXTEENTH CAUSE OF ACTION
### Failure to Intervene Under
### New York State Law

166.     The above paragraphs are here incorporated by reference as though fully set forth herein.

167.     Those Defendants that were present but did not actively participate in the aforementioned unlawful conduct, observed such conduct, had an opportunity to prevent such conduct, had a duty to intervene and prevent such conduct, and failed to intervene.

168.     Defendant City, as employer of the individual Defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior*.

169.     As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

## SEVENTEENTHCAUSE OF ACTION
### Failure to Intervene Under
### 42 U.S.C. § 1983 Against Individual Defendants

170.     The above paragraphs are here incorporated by reference as though fully set forth herein.

171.     Those Defendants that were present but did not actively participate in the aforementioned unlawful conduct observed such conduct, had an opportunity to prevent such conduct, had a duty to intervene and prevent such conduct, and failed to intervene.

172.     Accordingly, the Defendants who failed to intervene violated the Fourth and Fourteenth Amendments.

173.    As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

## EIGHTEENTH CAUSE OF ACTION
Negligent Hiring, Training, Retention and Supervision Under
New York State Law

174.    The above paragraphs are here incorporated by reference as though fully set forth.

175.    Defendant City owed a duty of care to Plaintiff to adequately hire, train, retain and supervise its employee defendants.

176.    Defendant City breached those duties of care.

177.    Defendant City placed defendants in a position where they could inflict foreseeable harm.

178.    Defendant City knew or should have known of its employee defendants' propensity for violating the individual rights granted under the United States Constitution and the laws of the State of New York, prior to the injuries incurred by Plaintiff.

179.    Defendant City failed to take reasonable measures in hiring, training, retaining and supervising its employee defendants that would have prevented the aforesaid injuries to Plaintiff.

180.    As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

## NINETEENTH CAUSE OF ACTION
Municipal *"Monell"* Liability Under
42 U.S.C. § 1983 Against Defendant City

181.    The above paragraphs are here incorporated by reference as though fully set forth.

182.    Defendant City maintained a policy or custom that caused Plaintiff to be deprived of his civil rights, tacitly approved of such violative conduct or was deliberately indifferent toward the potential exposure of individuals, such as plaintiff, to such violative behavior.

183.    Defendant City's employee police officers have engaged in an illegal pattern and practice of misconduct, so consistent and widespread that it constitutes a custom or usage, of which a supervisor or policymaker must have been aware of.

184.    Defendant City and its policymakers failed to provide adequate training or supervision to their subordinates to such an extent that is tantamount to a deliberate indifference toward the rights of those who may come into contact with defendant City's employees.

185.    Defendant City's employees engaged in such egregious and flagrant violations of plaintiff's Constitutional rights that the need for enhanced training or supervision is obvious and equates to a display of deliberate indifference by defendant City and its policymakers toward the rights of individuals, who may come into contact with defendant City's employees.

186.    Defendant City's repeated refusal or failure to install or apply corrective or preventive measures constitutes the tacit approval of such violative behavior or a deliberate indifference to the rights of those who may be affected by such behavior.

187.    Defendant City's conduct caused the violation of plaintiff's civil rights, pursuant to Constitution of the United States.

188.    As a direct and proximate result of this unlawful conduct, plaintiff sustained the damages hereinbefore alleged.


        **WHEREFORE**, Plaintiff respectfully requests judgment against Defendants, jointly and severally, as follows:

a)      In favor of Plaintiff in an amount to be determined by a jury for each of Plaintiff's causes of action;

b)      Awarding Plaintiff punitive damages in an amount to be determined by a jury;

c)      Awarding Plaintiff compensatory damages in an amount to be determined by a jury;

d)      Awarding Plaintiff reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988; and

**e)**      Granting such other and further relief as this Court deems just and proper.


## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: December 24, 2019

                                                Respectfully submitted,


                                                _S/ Samuel C. DePaola____
                                                Samuel C. DePaola, Esq.
                                                Bar Number: SD0622
                                                Sim & DePaola, LLP
                                                *Attorneys for Mr. Guillen*
                                                4240 Bell Blvd - Ste 201
                                                Bayside, NY 11361
                                                T: (718) 281-0400
                                                F: (718) 631-2700
                                                sdepaola@simdepaola.com