UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------X

EDWARD GUILLEN,

        Plaintiff,

     - against -

CITY OF NEW YORK, individually and in their
official capacities as police officers,
YERALDY BONIFACIO, MICHAEL DAPPOLONIA, JOSE
TORIBIO, AMANDA KNAPP, and JOHN DOES 1-10,

        Defendants.

--------------------------------------X

**MEMORANDUM AND ORDER**

19 Civ. 11784 (NRB)

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

Plaintiff Edward Guillen ("Guillen" or "plaintiff") brings this action against the City of New York (the "City"), New York Police Department ("NYPD") Officers Yeraldy Bonifacio ("Bonifacio"), Michael Dappolonia ("Dappolonia"), Jose Toribio ("Toribio"), Amanda Knapp ("Knapp" and together with Bonifacio, Dappolonia, Toribio, and Knapp the "Officer Defendants")[1] (collectively with the City, "defendants"), asserting 19 claims pursuant to 42 U.S.C. §§ 1981, 1983, 1985, 1986, and 1988; Monell v. Department of Social Services of City of New York, 436 U.S. 658 (1978) ("Monell"); and

---

[1] Plaintiff also included John Doe NYPD Officers 1-10 in the case caption. These John Doe defendants are dismissed. Plaintiff "has had ample time to identify" the John Doe defendants but has failed to do so. See Coward v. Town & Village of Harrison, 665 F. Supp. 2d 281, 300 (S.D.N.Y. 2009) (quoting Kearse v. Lincoln Hosp., No. 07-cv-4730 (PAC) (JCF), 2009 WL 1706554, at *3 (S.D.N.Y. June 17, 2009)); see also Keesh v. Artuz, No. 97-cv-8417 (AKH), 2008 WL 3166654, at *2 (S.D.N.Y. Aug. 6, 2008) ("Even after discovery, plaintiff has failed to identify the 'John Doe' and 'Jane Doe' defendants. Accordingly, the complaint against them must be dismissed.").

various New York state laws.  See ECF No. 1 (the "Complaint" or "Compl.").  Specifically, Guillen alleges federal claims against the City pursuant to Monell and against the Officer Defendants for: unlawful search and seizure; false arrest and false imprisonment; excessive force; malicious prosecution; malicious abuse of process; denial of the right to a fair trial; deprivation of rights and denial of equal protection; conspiracy to interfere with civil rights and failure to prevent the conspiracy; and failure to intervene.  Compl. ¶¶ 64–188.  Guillen also brings state law claims for: unlawful search and seizure; false arrest and false imprisonment; assault and battery; malicious prosecution; malicious abuse of process; denial of the right to a fair trial; deprivation of rights and denial of equal protection; failure to intervene; and negligent hiring, retention, and supervision.  Id.

Before the Court is defendants' motion for summary judgment. ECF No. 45.  For the reasons set forth below, we conclude that defendants are entitled to summary judgment.  Accordingly, we dismiss the complaint in its entirety.

## I.   BACKGROUND[2]

This case arises from an arrest that occurred on January 31, 2018 near 194 Lenox Avenue in New York City.  Defs. 56.1 ¶¶ 6, 15. At approximately 10:30 p.m., plaintiff was driving alone when he was pulled over by Officers Bonifacio and Dappolonia.  Id. ¶ 6. Defendants maintain that the officers stopped Guillen's Ford Expedition because his license plate lamp was unilluminated.  Id. In stark contrast, plaintiff claims that the officers were already canvassing for his vehicle and pulled him over because a dispatcher informed them earlier that evening of two separate 911 calls from a woman who alleged that she was held at gunpoint and that a firearm was inside a vehicle that matched the description and license plate number of plaintiff's car.  Pl. 56.1 ¶ 6A.[3]

---

[2] The following facts are drawn from Defendants' Rule 56.1 Statement submitted on August 1, 2022 ("Defs. 56.1"), ECF No. 46; Guillen's Response to Defendants' Rule 56.1 Statement filed on September 29, 2022 ("Pl. 56.1"), ECF No. 54; the exhibits submitted contemporaneously with defendants' motion for summary judgment and appended to the declaration of Mary K. Sherwood ("Sherwood Decl."), ECF No. 47; and the exhibits submitted contemporaneously with plaintiff's opposition and appended to the declaration of Ataur Raquib ("Raquib Decl."), ECF No. 52.

Plaintiff's Response to Defendants' Rule 56.1 Statement is replete with legal arguments, conclusions, and statements that are unsubstantiated by citations to the record.  Accordingly, we have undertaken "an assiduous review of the record" to determine whether material facts are in dispute.  See Spiegel v. Schulmann, 604 F.3d 72, 83 (2d Cir. 2010) (internal quotation marks omitted); see also Alliance Sec. Prods., Inc. v. Fleming Co., 471 F. Supp. 2d 452, 454 (S.D.N.Y. 2007) ("[L]egal arguments . . . belong in briefs, not Rule 56.1 statements, and so are disregarded in determining whether there are genuine issues of material fact.").  In addition, because plaintiff completely fails to respond to paragraphs 28-33 of defendants' Rule 56.1 Statement, the facts therein are deemed admitted.  See T.Y. v. New York City Dep't of Educ., 584 F.3d 412, 418 (2d Cir. 2009) ("A nonmoving party's failure to respond to a Rule 56. 1 statement permits the court to conclude that the facts asserted in the statement are uncontested and admissible.").  The facts in paragraphs 1-28 of defendants' Rule 56.1 Statement are undisputed unless otherwise noted.

[3] For the reasons discussed infra, this dispute is not material to our determination that defendants are entitled to summary judgment and therefore needs not be resolved.

After stopping Guillen's car, the officers approached and smelled marijuana. Defs. 56.1 ¶ 7. Plaintiff admits that he had been smoking marijuana earlier that day but denies that he smoked in his vehicle. Pl. 56.1 ¶ 8A. The officers then directed plaintiff to exit the car, after which they frisked him and searched the vehicle. Id. ¶¶ 10-11. Inside the car, Officer Bonifacio found a backpack, felt the outside of the bag, and detected what appeared to be a handgun. Defs. 56.1 ¶¶ 12-13. Upon opening the backpack, Officer Bonifacio found an all-black, air-powered gun with a laser pointer attached:

 

Id. ¶ 14; Sherwood Decl. Ex. I, New York Police Department ECT Report.

Guillen was handcuffed, arrested, and taken to the 28th Precinct. Defs. 56.1 ¶¶ 15, 17. Plaintiff alleges that he was strip searched at the precinct, during which he was told to remove his pants and squat. Id. ¶ 21. Guillen does not recall whether his undergarments were removed during this process. Id. ¶ 21. Officer Knapp was not present for and did not perform a strip search of

plaintiff, and Officers Bonifacio and Dappolonia could not recall if plaintiff was strip searched.  Id. ¶¶ 23-25.[4]

Officer Knapp, a member of NYPD's Evidence Collection Team, responded to the precinct.  Id. ¶ 18.  She secured the air gun and confirmed that it was not loaded with ammunition, but instead contained an operable carbon dioxide canister.  Id. ¶ 19.

Thereafter, the New York County District Attorney's Office ("DANY") drafted a criminal court complaint, charging plaintiff with Possession of an Air Pistol and Possession of an Imitation Firearm in violation of New York City Administrative Code §§ 10-131(b) and 10-131(g), which was signed by Officer Bonifacio on February 1, 2018. Id. ¶¶ 26-27.  DANY dismissed the complaint against Guillen on November 8, 2019.  Raquib Decl. Ex. 9, New York City Criminal Court Certificate of Disposition.

On December 24, 2019, plaintiff brought the instant action, alleging violations under 42 U.S.C. §§ 1981, 1983, 1985, 1986, and 1988; Monell; and state law.  ECF No. 1.  On July 6, 2020, defendants filed an answer denying plaintiff's allegations.  ECF No. 13.  The parties subsequently engaged in discovery, which concluded on February 7, 2022.  See ECF No. 25.  Following the close of discovery, defendants filed this motion for summary judgment on August 1, 2022, ECF No. 45, along with an associated declaration, exhibits, and Rule 56.1 statement, ECF Nos. 46-47, and a memorandum of law, ECF No. 48

---

[4] Officer Toribio is not mentioned with respect to the strip search, nor is he mentioned in either side's 56.1 statement beyond the case caption.

("Defs. Br."). Plaintiffs filed a Memorandum of Law in Opposition on September 29, 2022, ECF No. 53 ("Pl. Opp."), along with an associated declaration, exhibits, and Rule 56.1 counter statement, ECF Nos. 52, 54. Defendants filed a Reply Memorandum of Law on November 25, 2022, ECF No. 62 ("Defs. Reply").

## II.  <u>LEGAL STANDARD</u>

Summary judgment is properly granted where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. A fact is material "when it might affect the outcome of the suit under governing law," and "[a]n issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>McCarthy v. Dun & Bradstreet Corp.</u>, 482 F.3d 184, 202 (2d Cir. 2007) (internal quotation marks and citations omitted). The movant "always bears the initial responsibility of informing the district court of the basis for its motion," as well as the basis for any absence of material fact in dispute. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). In ruling on the motion, the Court must view all facts "in the light most favorable" to the non-moving party. <u>Holcomb v. Iona Coll.</u>, 521 F.3d 130, 132 (2d Cir. 2008).

"[T]he party opposing summary judgment may not merely rest on the allegations or denials of his pleading; rather his response, by affidavits or otherwise as provided in the Rule, must set forth specific facts demonstrating that there is a genuine issue for

trial." Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009) (internal quotation marks omitted).  "[A] party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." Hicks v. Baines, 593 F.3d 159, 166 (2d Cir. 2010) (internal quotation marks and citation omitted).

### III.  DISCUSSION

#### A. Officer Knapp and Officer Toribio

We first address the fact that Officers Knapp and Toribio, who were named as defendants, were not personally involved in any of plaintiff's alleged claims, and thus any § 1983 claims against them must be dismissed.  "In this Circuit personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." McKinnon v. Patterson, 568 F.2d 930, 934 (2d Cir. 1977).  Officer Knapp, a member of NYPD's Evidence Collection Team, was called to the precinct after Guillen's arrest.  Defs. 56.1 ¶ 18.  However, her involvement was limited to matters concerning the BB gun.  Id. ¶¶ 18-20.  It is undisputed that Officer Knapp was not present for the stop and search of plaintiff's vehicle and his arrest, nor did she have any role in plaintiff's prosecution or purported strip search.  Id. ¶¶ 16, 18, 20, 23, 31-32.  We therefore dismiss all claims against her.

Likewise, all claims against Officer Toribio must be dismissed.  Officer Toribio was grouped into multiple allegations within the Complaint that listed each of the Officer Defendants.  See, e.g.,

Compl. ¶¶ 19-22, 24-27.  Defendants thereafter raised an affirmative defense in their answer that Officer Toribio was not personally involved in the incidents alleged in the Complaint.  ECF No. 13 ¶ 200.  No subsequent filing in the case even mentions Officer Toribio beyond the case caption, and we therefore deem any claims against him to be abandoned by plaintiff and deficient for lack of personal involvement.  See Maione v. Zucker, No. 18-cv-7452 (KMK), 2022 WL 784483, at *8 (S.D.N.Y. Mar. 15, 2022) (merely "naming [a defendant] in the case caption and describing his position is insufficient to establish personal involvement").

### B. Reasonable Suspicion and Probable Cause

Issues related to reasonable suspicion and probable cause course throughout this case because they are either necessary elements of, or provide a complete defense for, the following federal claims against Officers Bonifacio and Dappolonia: unlawful search and seizure; false arrest and false imprisonment; malicious prosecution; malicious abuse of process; and failure to intervene. As the discussion below will demonstrate, these claims are foreclosed -- in whole or in part -- because Officers Bonifacio and Dappolonia had: (i) reasonable suspicion and probable cause to stop plaintiff's vehicle; (ii) probable cause to search plaintiff's vehicle; and (iii) probable cause to arrest plaintiff.

#### i. *Stop of Plaintiff's Vehicle*

Guillen contends that the officers' search of his vehicle and his subsequent arrest are tainted because defendants cannot

"demonstrate[e] irrefutable evidence of probable cause for the commission of a traffic violation as lawful cause for an automobile stop with respect to the failure to illuminate a license plate, that lead [sic] to a search for marijuana, and ended with Defendant Officers finding a BB gun all the way in the back of Mr. Guillen's car." Pl. Opp. at 15. Plaintiff's argument is fatally flawed on multiple fronts.

As an initial matter, plaintiff misconstrues the relevant law. First, to the extent that Guillen asserts that an improper traffic stop could render the officers' subsequent search or the discovery of a BB gun during that search unlawful, the Second Circuit has held that the "fruit of the poisonous tree" doctrine is "inapplicable to civil § 1983 actions"; rather, it is an "evidentiary rule that operates in the context of criminal procedure." Townes v. City of New York, 176 F.3d 138, 145 (2d Cir. 1999). Thus, the legality of Guillen's stop is irrelevant to any § 1983 claims stemming from the search of his vehicle and the recovery of his BB gun therein. See id.; Di Pompo v. Mendelson, No. 21-cv-1340 (CS), 2022 WL 463317, at *2 (S.D.N.Y. Feb. 15, 2022) ("Because the Second Circuit has rejected the application of the fruit of the poisonous tree doctrine to § 1983 actions, the violation discovered during the stop is not tainted by the alleged lack of reasonable suspicion justifying the stop.") (internal citation and quotation marks omitted).

Second, contrary to Guillen's erroneous assertion, defendants do not need to "demonstrate[e] irrefutable evidence of probable cause

for the commission of a traffic violation." Pl. Opp. at 15. Rather, officers are justified under the Fourth Amendment "in making an investigatory stop of a person if the officer has <u>reasonable suspicion</u> to believe that the person violated traffic laws." <u>United States v. Reyes</u>, No. 11-cr-58 (RJH), 2012 WL 363042, at *4 (S.D.N.Y. Feb. 1, 2012) (citing <u>Delaware v. Prouse</u>, 440 U.S. 648, 663 (1979), <u>United States v. Scopo</u>, 19 F.3d 777, 781 (2d Cir. 1994)) (emphasis added); <u>see also</u> <u>United States v. Stewart</u>, 551 F.3d 187, 191 (2d. Cir. 2009) ("We have held repeatedly that a traffic stop based on a reasonable suspicion of a traffic violation comports with the Fourth Amendment."). As plaintiff's counsel no doubt knows, probable cause is sufficient, but not necessary, to support a traffic stop. <u>See, e.g.</u>, <u>Stewart</u>, 551 F.3d at 191.

Here, Officers Bonifacio and Dappolonia had both reasonable suspicion and probable cause to believe that Guillen violated New York Vehicle and Traffic Law § 375(2)(a), which provides that:

> Every motor vehicle except a motorcycle, driven upon a public highway during the period from one-half hour after sunset to one-half hour before sunrise . . . shall display . . . if required to display a number plate on the rear, a white light which shall illuminate the numerals on such plate in such manner as to render such numerals legible for at least fifty feet from the rear . . . .

N.Y. Vehicle and Traffic Law § 375(2)(a)(4). It is undisputed that plaintiff was stopped at 10:30 p.m., <u>i.e.</u>, past sunset. Pl. 56.1 ¶ 6. Guillen denies, however, that he was pulled over because of an unilluminated license plate. Pl. Opp. at 16. Instead, he contends that "one of the officers fabricated th[is] reason," and the officers

were actually "canvassing Lenox Avenue for a period of time to find a vehicle matching the Ford Expedition and license plate of the one Plaintiff was driving" after a 911 dispatcher informed officers that a person driving in a Ford Expedition with a Pennsylvania license plate JBR5606 held a female caller at gun point.  Id.; Pl. 56.1 ¶ 6A.

Guillen's assertion that Officers Dappolonia and Bonifacio "fabricated" the existence of plaintiff's unilluminated license plate is without any basis in the record.  Guillen acknowledged at his own deposition that he was the only person driving the Ford Expedition "in January of 2018," and Officers Dappolonia and Bonifacio informed him during his traffic stop that he was being pulled over because of a defective light in the back of his car:

> Q. Did they tell you why they pulled you over?
> A. They said because a light -- my brake light, it was off, that's what they say.
> Q. Okay. They said a light was off?
> A. Yes. A brake light in the back, yeah.
> Q. Was it the license plate light?
> A. I don't remember.

Sherwood Decl. Ex. E, Deposition of Edward Guillen at 28:14-20, 33:15-17.  Moreover, Officers Dappolonia and Bonifacio offered consistent sworn testimony that Guillen was stopped for a defective rear license plate lamp.  See Sherwood Decl. Ex. G, Deposition of Michael Dappolonia at 35:23-36:7; Sherwood Decl. Ex. H, Declaration of Yeraldy Bonifacio ¶ 2.  Guillen's fabrication allegation is also refuted by Officer Dappolonia's contemporaneous memo book, which notates that he conducted a "car stop" on January 31, 2018 and

references a "defective rear license plate lamp."  Raquib Decl. Ex.
1, Michael Dappolonia Memo Book Entries.[5]  In sum, on the basis of
the record submitted on this motion, plaintiff has failed to overcome
defendant's prima facie showing by demonstrating a genuine dispute
of material fact as to whether he was pulled over because the car he
was driving failed to have a required light.  See Gallo v. Prudential
Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1224 (2d Cir. 1994)
(granting summary judgment where "no rational jury could find in
favor of the [plaintiff] because the evidence to support its case is
so slight").[6]

Third, even if it were the case that Officers Dappolonia and
Bonifacio pulled plaintiff over because they had been apprised of
two separate 911 calls from a woman who alleged that she was held at

_____

[5] Plaintiff's arguments that the officers did not have probable cause to stop the
vehicle because he was not charged with any traffic violation and Officer Bonifacio
concluded in a property voucher that nothing was "defective, damaged, or in need
of repair" are also unavailing.  Pl. Opp. at 7.  The fact that plaintiff was not
eventually charged with a traffic violation is irrelevant; an individual need not
be charged with every crime that is supported by probable cause.  See Jaegly v.
Couch, 439 F.3d 149, 154 (2d Cir. 2006) (relevant inquiry is "whether probable
cause existed to arrest," and "it is not relevant whether probable cause existed
with respect to each individual charge, or, indeed, any charge actually invoked
by the arresting officer at the time of arrest").  Further, Officer Dappolonia's
voucher stating that nothing was "defective, damaged, or in need of repair,"
Raquib Decl. Ex. 3, NYPD Motor Vehicle Inspection Voucher, does not advance
plaintiff's claims.  As defendants note, "an unilluminated vehicle light is not
missing or damaged: It simply needs a new bulb," which is why "driving with a
broken or nonfunctioning license plate light is not unlawful during the day."
Defs. Reply at 7.

[6] In addition, Guillen conveniently fails to mention that he was driving the same
car a mere 27 days earlier and was stopped by totally different police officers
for an unilluminated license plate -- a stop which was the predicate of another
case within this district.  Guillen v. City of New York, No. 19-cv-5655 (JPC)
(OTW), 2022 WL 4072925, at *1-2 (S.D.N.Y. Sept. 2, 2022).  There, Judge Cronan
granted defendants motion for summary judgment in its entirety, id. at *1, and
found that Guillen's deposition testimony asserting that his license plate was
illuminated was flatly contradicted by body worn camera footage from one of the
arresting officers.  Id. at *7.  In this regard, it is worth noting that plaintiff
provides no evidence that his license plate lamp was replaced in the interim.

gunpoint and that a firearm could be found inside a vehicle that matched the description and license plate number of plaintiff's Ford, the officers certainly had reasonable suspicion to stop the vehicle. See 56.1 ¶ 6A; Raquib Decl. Ex. 1, Yeraldy Bonifacio Memo Book Entries. Indeed, the Supreme Court has held that a 911 call is sufficiently reliable for purposes of establishing reasonable suspicion when the caller, as in this case, describes a vehicle's specific brand name, model, and license plate number; reports the information "soon after" the incident; and purports to be the victim of a crime. Navarette v. California, 572 U.S. 393, 396-401 (2014).[7]

### ii. Search of Plaintiff's Vehicle

Next, Officers Dappolonia and Bonifacio had probable cause to search Guillen's vehicle. It is undisputed that they smelled marijuana upon approaching the car; plaintiff freely admits that his vehicle regularly smelled of marijuana and he had been smoking marijuana that day. Defs 56.1 ¶ 8; Pl. 56.1 ¶¶ 8A, 9A; see United States v. Goolsby, 820 F. App'x 47, 49 (2d Cir. 2020) (probable cause existed to search vehicle during traffic stop when officer smelled burnt marijuana as he approached the car and defendant informed the officer that he had been smoking earlier). When police have probable cause to search an entire vehicle, they may search all compartments,

---

[7] We also note that officers may rely on hearsay to establish probable cause, and the Court may properly consider such hearsay at summary judgment. See United States v. Premises & Real Prop. at 4492 S. Livonia Rd., 889 F.2d 1258, 1267 (2d Cir. 1989); accord Martinez v. City of New York, 564 F. Supp. 3d 88, 99 (E.D.N.Y. 2021). In addition, to the extent that Guillen contends that the unilluminated license plate was pretextual, "an arresting officer's state of mind (except for the facts that he knows) is irrelevant to the existence of probable cause." Devenpeck v. Alford, 543 U.S. 146, 153 (2004).

containers, and packages within the vehicle capable of concealing the object of the search. Wyoming v. Houghton, 526 U.S. 295, 301 (1999). Thus, Officers Dappolonia and Bonifacio were justified in searching Guillen's backpack, which was capable of concealing drugs. Id.; accord United States v. Babilonia, 854 F.3d 163, 178 (2d Cir. 2017).[8]

   iii. *Arrest of Plaintiff*

Officers Bonifacio and Dappolonia had two separate and sufficient bases constituting probable cause to arrest Guillen.[9] First, the officers were entitled to arrest plaintiff after observing his unilluminated license plate, which violated New York Vehicle and Traffic Law § 375(2)(a)(4). See Guillen, 2022 WL 4072925, at *7 ("[W]hen an officer observes a traffic offense—however minor—he has probable cause to stop the driver of the vehicle and effect a subsequent arrest for that offense.") (quoting Kennedy v. City of New York, 570 F. App'x 83, 84 (2d Cir. 2014)); see also Quiles v. City of New York, No. 15-cv-1055 (CM), 2016 WL 6084078, at *6 (S.D.N.Y. Oct. 12, 2016) ("[A] person can be arrested even for a

---

[8] At the time of the incident, a person was "guilty of unlawful possession of marihuana when he knowingly and unlawfully possesse[d] marihuana." New York Consolidated Laws § 221.05 (1995) (Repealed).

[9] "Probable cause is established when the arresting officer has knowledge or reasonable trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." Harrison v. Cty. of Nassau, 804 F. App'x 24, 27 (2d Cir. 2020) (internal quotation marks omitted). "[P]robable cause does not require absolute certainty," Panetta v. Crowley, 460 F.3d 388, 395 (2d Cir. 2006) (internal quotation marks omitted), but its existence may "be determinable as a matter of law if there is no dispute as to pertinent events and the knowledge of the officers . . . ." Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996).

minor traffic infraction and even if the traffic violation is used as a pretext to find evidence of further criminal activity.   A traffic infraction is deemed an offense that can give rise to probable cause for arrest.") (internal citations omitted).

Second, the BB gun containing a carbon dioxide cartridge that was found in plaintiff's car provided a separate lawful basis for his arrest.   There is no dispute that Officers Dappolonia and Bonifacio recovered an air-powered BB gun from Guillen's backpack, and New York City Administrative Code § 10-131(b) is clear that it is "unlawful for any person to sell, offer to sell or have in such person's possession any air pistol or air rifle or similar instrument in which the propelling force is a spring or air . . . ."   New York City Administrative Code § 10-131(b)(1) further provide that a BB gun powered by a carbon dioxide cartridge qualifies as an air gun. Moreover, New York City Administrative Code § 10-131(g)(1) makes it unlawful for any person to possess "any toy or imitation firearm which substantially duplicates or can reasonably be perceived to be an actual firearm."   Guillen's BB gun, which was all black with an open barrel and laser pointer (pictured supra), gave the arresting officers "knowledge or reasonable trustworthy information sufficient to warrant a person of reasonable caution" to believe that plaintiff possessed an air pistol that could reasonably be perceived to be an actual firearm.   Harrison, 804 F. App'x at 27.

Accordingly, Officers Dappolonia and Bonifacio had probable cause to stop plaintiff's vehicle, search it, and arrest him.

Although these findings dispose of many of Guillen's claims against the Officer Defendants, we briefly address each cause of action individually and find that summary judgment should be granted for defendants on all claims.

### C. Unreasonable Search and Seizure Claims

Guillen asserts four bases for his unlawful search and seizure claims: (1) the officers' traffic stop constituted an unlawful seizure of his vehicle; (2) he was subjected to an unlawful pat frisk after the officers pulled his over car and he was told to exit the vehicle; (3) after being frisked, his vehicle was unlawfully searched; and (4) upon being arrested, was subjected to an unlawful strip search during his arrest processing.  Pl. Opp. at 17-18.  All grounds fail, because, as set forth above, "[t]he existence of probable cause will defeat a claim of . . . unreasonable search and seizure."  Fabrikant v. French, 691 F.3d 193, 215 (2d Cir. 2012).

First, as we have found, plaintiff's argument that the traffic stop was an unlawful seizure is meritless because Officers Dappolonia and Bonifacio had reasonable suspicion and probable cause to believe that Guillen committed a traffic violation.  See supra; Stewart, 551 F.3d at 191 ("We have held repeatedly that a traffic stop based on a reasonable suspicion of a traffic violation comports with the Fourth Amendment.").

Second, with respect to the pat frisk, "as long as a police officer has probable cause to arrest a suspect prior to searching the suspect, the search [of plaintiff's person] will be valid, even

if the officer initially had no intention of arresting the suspect." United States v. Koron, 101 F.3d 682, 683 (2d Cir. 1996). Because the arresting officers had probable cause to arrest Guillen for his unilluminated license plate, they could properly frisk him for weapons, even though he had yet to be arrested. See United States v. Diaz, 122 F. Supp. 3d 165, 171 (S.D.N.Y. 2015), aff'd, 854 F.3d 197 (2d Cir. 2017) ("[A] search incident to an arrest may take place before the arrest itself 'as long as probable cause to arrest existed at the time of the search.'") (quoting United States v. Jenkins, 496 F.2d 57, 72-73 (2d Cir. 1974)); see also United States v. Little, 945 F. Supp. 79, 82-83 (S.D.N.Y. 1996), aff'd, 133 F.3d 908 (2d Cir. 1998) (officers properly frisked defendant after he committed traffic violations and officers smelled the odor of marijuana coming from his car).

In addition, if, as Guillen argues, the officers pulled Guillen's vehicle over because of the female victim's 911 calls, they had even more justification to frisk him. An "officer making an investigatory stop 'should not be denied the opportunity to protect himself from attack by a hostile suspect,'" Floyd v. City of New York, 959 F. Supp. 2d 540, 568 (S.D.N.Y. 2013) (quoting Adams v. Williams, 407 U.S. 143, 146 (1972)), and thus may lawfully frisk a suspect for weapons so long as the officer "reasonably believes or suspects [a weapon is] in the possession of the person he has accosted," id. (quoting Ybarra v. Illinois, 444 U.S. 85, 93 (1979)). Here, assuming a dispatcher informed the officers that a person

driving in a Ford Expedition with a Pennsylvania license plate JBR5606 held a female caller at gun point, and a gun could be found in the car, the officers could have reasonably suspected that Guillen possessed a gun.  Pl. 56.1 ¶ 6A.

Third, plaintiff's claim regarding the search of his vehicle is meritless for the reasons discussed <u>supra</u>.

Last, defendants are entitled to summary judgment on plaintiff's strip search claim.  "[A] 'strip search' occurs when a suspect is required to remove his clothes," <u>Gonzalez v. City of Schenectady</u>, 728 F.3d 149, 158 (2d Cir. 2013), and officers inspect the subject as he "stands naked in their presence." <u>Monroe v. Gould</u>, 372 F. Supp. 3d 197, 204 (S.D.N.Y. 2019) (quoting <u>United States v. Gonzalez</u>, 111 F. Supp. 3d 416, 431 (S.D.N.Y. 2015)).  In addition, plaintiff must show that named defendants participated in the alleged strip search.  <u>See</u> <u>Rivera v. Carroll</u>, No. 07-cv-7847 (RJS), 2009 WL 2365240, at *10 (S.D.N.Y. Aug. 3, 2009).  Defendants have met their burden on this claim by exposing plaintiff's inability to put forth any evidence supporting the notion that he was naked during the search and his failure to point to any specific defendant who authorized, conducted, or was even present for the alleged strip search.  Defs. 56.1 ¶¶ 21-25; <u>Citizens Bank of Clearwater v. Hunt</u>, 927 F.2d 707, 713 (2d Cir. 1991) ("[T]he burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case.") (internal quotation marks omitted).  Guillen, in

turn, does not refute defendants' arguments with evidence sufficient to create a genuine issue of material fact.  By his own admission, plaintiff does not recall whether he removed his boxers during the search, and he has not provided proof that any of the named defendants participated in the allegedly unconstitutional strip search.  Pl. 56.1 ¶¶ 21A-25A.  "Without some evidence, [Guillen's] argument is wholly speculative and, as such, is insufficient to defeat [defendants'] motion for summary judgment."  Saks v. Franklin Covey Co., 316 F.3d 337, 348 (2d Cir. 2003).[10]

### D. False Arrest and False Imprisonment

Plaintiff's false arrest and false imprisonment claims are also dismissed because the officers had probable cause to arrest him.  "The existence of probable cause to arrest constitutes justification and is a complete defense to an action for false arrest, whether that action is brought under state law or under § 1983."  Weyant, 101 F.3d at 852 (internal quotation marks and citation omitted);

---

[10] There is likewise no evidence for plaintiff's additional assertion that he was "strip searched with attendant cavity inspection."  Pl. Opp. at 8; see Monroe, 372 F. Supp. 3d at 431 (body cavity search is more invasive than a strip search and requires either visual or manual inspection of body cavities).

In addition, even assuming, arguendo, that plaintiff had been subjected to a strip search, such a search may nonetheless have been justified.  The arresting officers could have reasonably assumed that Guillen was hiding drugs on his person after they smelled marijuana and learned that plaintiff had smoked marijuana earlier that day but were unable to find drugs during their pat frisk of plaintiff's clothing or in their search of his vehicle.  Def. 56.1 ¶¶ 7-8, 11. See Elk v. Townson, 839 F. Supp. 1047, 1052 ("[Arrestee's] presence in a vehicle which smelled strongly of marijuana and in which marijuana was found both on another occupant and in a container located near him gave the Sheriff's Office reasonable grounds to suspect that [he] might be hiding drugs on his person.").  We do not reach a conclusion on this issue, however, given the absence of proof that a strip search took place.

accord <u>Escalera v. Lunn</u>, 361 F.3d 737, 743 (2d Cir. 2004); <u>Bernard v. U.S.</u>, 25 F.3d 98, 102 (2d Cir. 1994).

### E. Malicious Prosecution

Likewise, "[t]o make out a federal claim [of malicious prosecution] under 42 U.S.C. § 1983" a plaintiff must show "lack of probable cause for commencing the proceeding." <u>Willey v. Kirkpatrick</u>, 801 F.3d 51, 70 (2d Cir. 2015); <u>see also</u> <u>Fabrikant</u>, 691 F.3d at 215 ("[T]he existence of probable cause will defeat a claim of malicious prosecution . . . ."). Guillen's claim is foreclosed for that reason alone, but we also note that his opposition brief asserts malicious prosecution claims against two individuals <u>who are not even defendants in this action</u>. <u>See</u> Pl. Opp. at 18 ("Defendants Cannizaro and Bardales initiated a criminal proceeding against Plaintiff by charging him with two counts relating to possession of an air pistol. . . . [M]alice can be inferred from defendants' combined conduct."). Officers Cannizzaro and Bardales were named defendants in Guillen's case before Judge Cronan, and the obvious copy and paste from another brief is concerning.

### F. Malicious Abuse of Process

Though "the weight of authority holds that the presence of probable cause negates a claim for abuse of criminal process," "the law is not entirely settled" on this point. <u>Pinter v. City of New York</u>, 976 F. Supp. 2d 539, 569 (S.D.N.Y. 2013). Thus, although probable cause likely forecloses Guillen's malicious abuse of

process claim, we also evaluate the claim's elements and conclude that Guillen does not satisfy those requirements.

"[I]n New York, a malicious abuse-of-process claim lies against a defendant who (1) employs regularly issued legal process to compel performance or forbearance of some act (2) with intent to do harm without excuse of justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process." Savino v. City of New York, 331 F.3d 63, 76 (2d Cir. 2003) (quoting Cook v. Sheldon, 41 F.3d 73, 80 (2d Cir. 1994)). "In addition, a plaintiff bringing an abuse of process claim must allege actual or special damages." Sforza v. City of New York, No. 07-cv-6122 (DLC), 2009 WL 857496, at *16 (S.D.N.Y. Mar. 31, 2009). "Malicious abuse of criminal process also supports liability under § 1983." Savino, 331 F.3d at 76-77.

There is no evidence that any of the Officer Defendants pursued a "collateral objective" in arresting Guillen. Guillen "does not provide any evidence to support his allegations and it is well-established that Plaintiff 'cannot defeat [Defendants' Motion] by relying on the allegations in his pleading.'" Guillen, 2022 WL 4072925, at *12 (quoting Gottlieb v. Cnty. of Orange, 84 F.3d 511, 518 (2d Cir. 1996)); see also Jones v. Int'l Union of Operating Eng'rs, 671 F. App'x 10, 11 (2d Cir. 2016) ("A party cannot overcome summary judgment by relying on mere speculation or conjecture as to the true nature of the facts because conclusory allegations or denials are insufficient to create a genuine dispute of material

fact.") (internal quotation marks omitted).  Guillen's "collateral objective" allegations are unsupported, and his entirely speculative malicious abuse of process claim must therefore be dismissed.[11]

### G. Failure to Intervene

Plaintiff's failure to intervene claim is likewise unavailing because it is "contingent upon the disposition of the primary claims underlying the failure to intervene claim." Usavage v. Port Auth. Of New York & New Jersey, 932 F. Supp. 2d 575, 599 (S.D.N.Y. 2013) (internal quotation marks omitted); Bridgeforth v. City of New York, No. 16-cv-273 (WHP), 2018 WL 3178221, at *12 (S.D.N.Y. June 28, 2018) ("A failure to intervene claim does not exist when the underlying constitutional claim has been dismissed.").  Moreover, when there is "probable cause to arrest [the plaintiff], his claim for failure to intervene necessarily fails." Williams v. City of New York, 409 F. Supp. 3d 137, 143 (E.D.N.Y. 2019).  Plaintiff's failure to intervene claim cannot succeed because the officers had probable cause to arrest Guillen, and no predicates for a failure to intervene claim exist since none of the other claims against the Officer Defendants survive this motion.

We now turn to plaintiff's causes of action that are not precluded by probable cause and conclude that they are also meritless.

---

[11] We note that Guillen attempted another direct copy and paste here, this time alleging that officers pursued the same "collateral objective" -- word for word -- as before Judge Cronan, i.e., that "defendants initiated a criminal prosecution against plaintiff to be awarded overtime and increase their arrest count").  See Pl. Opp. at 20; Guillen, 2022 WL 4072925, at *12.

### H. Excessive Force

"To establish a claim of excessive force, a plaintiff must show that the force used by the officer was, in light of the facts and circumstances confronting him, objectively unreasonable under Fourth Amendment standards." Davis v. Rodriguez, 364 F.3d 424, 431 (2d Cir. 2004) (internal quotation marks omitted). "Given the fact-specific nature of the inquiry, granting summary judgment against a plaintiff on an excessive force claim is not appropriate unless no reasonable factfinder could conclude that the officers' conduct was objectively unreasonable." Amnesty Am. V. Town of W. Hartford, 361 F.3d 113, 123 (2d Cir. 2004) (Sotomayor, J.).

Guillen's excessive force claim is based solely on tight handcuffing. However, he does not allege in the Complaint or elsewhere that he told any defendant that his handcuffs were too tight, nor did he suffer any physical injuries as a result of the handcuffing. See Defs. 56.1; Pl. 56.1. This alone precludes his claim. See Cugini v. City of New York, 941 F.3d 604, 612 (2d Cir. 2019) (with respect to excessive force claims due to tight handcuffing, courts generally consider (1) whether the arrestee's handcuffs were unreasonably tight; (2) whether the defendants ignored the arrestee's pleas that the handcuffs were too tight; and (3) the degree of injury to the arrestee's wrists). In any event, plaintiff failed to defend this excessive force claim in his summary judgment opposition, and we therefore deem it abandoned. See Kovaco v. Rockbestos-Surprenant Cable Corp., 834 F.3d 128, 143 (2d Cir.

23

2016) (court may infer from a party's partial opposition to a summary judgment motion that "relevant claims or defenses that are not defended have been abandoned") (internal quotation marks omitted).

### I. Denial of the Right to a Fair Trial

As with his unsupported and barebones claim of excessive force, plaintiff has abandoned his denial of the right to a fair trial claim by offering no evidence in support and by failing to respond to plaintiff's arguments in his opposition.[12]  Accordingly, Guillen's fair trial claim is dismissed.  See Kovaco, 834 F.3d at 143.

### J. Deprivation of Rights and Denial of Equal Protection

Plaintiff alleges that he was pulled over and prosecuted in violation of the Equal Protection Clause of the Fourteenth Amendment because he is a Hispanic male.[13]  Specifically, he claims that Officers Dappolonia and Bonifacio "stopped, questioned, searched, seized, arrested, and maliciously prosecuted plaintiff, due solely

---

[12] "[F]air trial claims based on fabrication of information [are restricted] to those cases in which an (1) investigating official (2) fabricates information (3) that is likely to influence a jury's verdict, (4) forwards that information to prosecutors, and (5) the plaintiff suffers a deprivation of life, liberty, or property as a result." Garnett v. Undercover Officer C0039, 838 F.3d 265, 279 (2d Cir. 2016) (citing Ricciuti v. N.Y.C. Transit Auth., 124 F.3d 123, 130 (2d Cir. 1997)).

[13] Under the Equal Protection Clause, no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. "At its core, the Equal Protection Clause prohibits the disparate treatment of similarly situated individuals." Guillen, 2022 WL 4072925, at *12 (citing City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985)).  "To establish a violation of the Equal Protection Clause based on selective enforcement, a plaintiff must ordinarily show the following: (1) that the person, compared with others similarly situated, was selectively treated; and (2) that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." Freedom Holdings, Inc. v. Spitzer, 357 F.3d 205, 234 (2d Cir. 2004) (quoting Lisa's Party City, Inc. v. Town of Henrietta, 185 F.3d 12, 16 (2d Cir. 1999)).

to defendants' perception or consideration of Plaintiff's race," and "subjected plaintiff to disparate treatment compared to other individuals similarly situated, because defendants did not pull over any white motorists, who were actually committing traffic infractions in the defendants' view." Compl. ¶¶ 43, 45.  These allegations are, yet again, conclusory and unsubstantiated by the record and are dismissed.  See Jones v. Int'l Union of Operating Engineers, 671 F. App'x 10, 11 (2d Cir. 2016) ("A party cannot overcome summary judgment by relying on mere speculation or conjecture as to the true nature of the facts because conclusory allegations or denials are insufficient to create a genuine dispute of material fact.") (internal quotation marks omitted); Gordon v. City of New York, No. 10-cv-5148 (CBA) (LB), 2012 WL 1068023, at *9 (E.D.N.Y. Mar. 29, 2012) (dismissing "wholly conclusory and unsupported" equal protection claim).[14]

---

[14] Guillen also brings an equal protection claim under § 1981. See Compl. ¶¶ 150-58.  Section 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to . . . the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment." 42 U.S.C. § 1981(a).  Like § 1983, equal protection claims under § 1981 require plaintiff to show that defendants maintained discriminatory intent. See Patterson v. Cnty. of Oneida, N.Y., 375 F.3d 206, 226 (2d Cir. 2004).  Because plaintiff has provided no evidence of such intent, his § 1981 claim is also dismissed as deficient.

Furthermore, in light of our conclusions, supra, that there were multiple lawful reasons to stop Guillen's car, search it, and arrest him, we find it noteworthy that plaintiff would argue, without any proof whatsoever, that Officers Dappolonia and Bonifacio took those actions because they were racist.  At a minimum, such a suggestion is irresponsible given the copious evidence to the contrary, and it may even implicate Federal Rule of Civil Procedure 11.

### K. Conspiracy to Interfere with Civil Rights and Failure to Prevent the Conspiracy

Plaintiff brings a claim for conspiracy to interfere with civil rights under §§ 1983 and 1985, and for failure to prevent that conspiracy under § 1986.  Compl. ¶¶ 159-65.  Defendants argue that the "intracorporate conspiracy doctrine" forecloses these causes of action, because the "defendant officers were all members of the NYPD pursuing interests consistent with the entity of the New York Police Department."  Defs. Br. at 19.  Plaintiff disagrees and adds that his claims fall within the so-called "personal stake exception."  Pl. Opp. at 22-24.  We agree with defendants and hold that plaintiff's conspiracy claims are barred.

The intracorporate conspiracy doctrine provides that: "officers, agents, and employees of a single corporate entity are legally incapable of conspiring together." Hartline v. Gallo, 546 F.3d 95, 99 n.3 (2d Cir. 2008) (internal quotation marks omitted); accord Guillen, 2022 WL 4072925, at *13; see also Fed. Ins. Co. v. United States, 882 F.3d 348, 368 (2d Cir. 2018) ("[B]ecause employees acting within the scope of their employment are agents of their employer, an employer and its employees are generally considered to be a single actor, rather than multiple conspirators.").  The personal stake exception "allows suits against individuals within a single entity when they are pursuing personal interests wholly separate and apart from the entity." Guillen, 2022

WL 4072925, at *13 (quoting <u>Dowd v. DeMarco</u>, 314 F. Supp. 3d 576, 588 (S.D.N.Y. 2018)).

We first address plaintiff's § 1985 conspiracy claim, which he effectively concedes is precluded by the intracorporate conspiracy doctrine.  <u>See</u> Pl. Opp. at 23.[15]  Indeed, the Second Circuit has extended the intracorporate conspiracy doctrine "to the context of conspiracies to interfere with civil rights in violation of 42 U.S.C. § 1985."  <u>Fed. Ins. Co.</u>, 882 F.3d at 368 n.14 (citing <u>Girard v. 94th St. & Fifth Ave. Corp.</u>, 530 F.2d 66, 70 (2d Cir. 1976)).  In addition, because Guillen's claim fails under § 1985, it must also fail under § 1986.  <u>Gagliardi v. Vill. of Pawling</u>, 18 F.3d 188, 194 (2d Cir. 1994) ("A claim under section 1986 . . . lies only if there is a viable conspiracy claim under section 1985.").

With respect to Guillen's § 1983 conspiracy claim, we acknowledge that Second Circuit has yet to decide whether the intracorporate conspiracy doctrine applies to conspiracy claims under § 1983, though "district courts have typically applied the logic of the intracorporate conspiracy doctrine to § 1983 claims." <u>Guillen</u>, 2022 WL 4072925, at *14 (internal citations omitted) (collecting district court cases in the Second Circuit).  Regardless, we need not reach this issue, because under either § 1983 or § 1985,

---

[15] We note that plaintiff alleges a conspiracy claim under § 1981, but § 1981 "does not itself provide a mechanism for recovering upon a claim of conspiring to violate § 1981. . . . Rather, § 1985 provides that mechanism." <u>Dilworth v. Goldberg</u>, 914 F. Supp. 2d 433, 465 (S.D.N.Y. 2012); <u>accord</u> <u>Bird v. Cnty. of Westchester</u>, No. 20-cv-10076 (NSR), 2022 WL 2263794, at *9 (S.D.N.Y. June 23, 2022).  We thus construe Guillen's § 1981 conspiracy claim as alleging a conspiracy under § 1985 to violate his § 1981 rights.

plaintiff has "not cited to any evidence in the record to support his conclusory allegations of the Officer Defendants' participation in a conspiracy to interfere with his civil rights or any discriminatory animus on their part." Id. at *15.  There is simply no proof that defendants engaged in a conspiracy "motivated by some racial, or otherwise class-based, invidious discriminatory animus," Compl. ¶ 163, and consequently his claims must be dismissed.  See Graham v. Henderson, 89 F.3d 75, 82 (2d Cir. 1996) (finding that the district court properly granted summary judgment dismissing plaintiff's § 1985 claim where the plaintiff only offered conclusory allegations of racial discrimination); ITC Ltd. v. Punchgini, Inc., 518 F.3d 159, 163 (2d Cir. 2008) ("Conjecture, of course, is insufficient to withstand summary judgment.").

## L. Monell Claim

In order to state a claim for municipal liability under Section 1983, a plaintiff must allege "(1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." Torraco v. Port Auth., 615 F.3d 129, 140 (2d Cir. 2010) (internal quotation marks omitted).  Thus, where there is "no underlying constitutional violation . . . [a court need not] address the municipal defendants' liability under Monell." Segal v. City of New York, 459 F.3d 207, 219 (2d Cir. 2006).

As demonstrated above, Guillen has not shown a constitutional violation.  Nor for that matter has he identified a specific policy or custom at issue.  See City of Okla. City v. Tuttle, 471 U.S. 808,

823-24 (1985) ("Proof of a single incident of unconstitutional activity is not sufficient to impose liability under <u>Monell</u>, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker."). We therefore dismiss Guillen's <u>Monell</u> claim.

### M. State Law Claims

Because plaintiff was arrested on January 31, 2018, he was obligated to bring a Notice of Claim for his state law claims of false arrest; assault; battery; malicious abuse of process; failure to intervene; equal protection; and negligent retention, hiring, and supervision by May 2, 2019 against both the City and the Officer Defendants. <u>See</u> Defs. 56.1 ¶¶ 3, 15; Def. Br. at 24-25; New York General Municipal Law §§ 50(e), 50(i). Plaintiff sought leave to file a late Notice of Claim in state court, which was denied on January 26, 2021 as to his all of his alleged state law claims other than the malicious prosecution claim. Defs. 56.1 ¶¶ 3-4. Guillen's state law claims, save his malicious prosecution claim, must therefore be dismissed on procedural grounds alone. And plaintiff's state law malicious prosecution claim fails on the merits because, as with a federal malicious prosecution claim, probable cause is a complete defense to a malicious prosecution claim in New York. <u>See</u> <u>Fortunato v. City of New York</u>, 63 A.D.3d 880, 880 (2d Dep't 2009).

**N. Qualified Immunity**

We need not and will not address whether the Officer Defendants are entitled to qualified immunity because the Court has dismissed plaintiff's claims on other grounds.

IV.   **CONCLUSION**

For the foregoing reasons, the Court grants defendants' motion for summary judgment in its entirety.  The Clerk of the Court is respectfully directed to enter judgment for defendants, terminate the motion pending at ECF No. 45, and close this case.


**SO ORDERED.**

DATED:   New York, New York
         March 17, 2023

_____
NAOMI REICE BUCHWALD
UNITED STATES DISTRICT JUDGE